# In the District Court of the United States
# For The District of South Carolina

### BEAUFORT DIVISION

| | |
|---|---|
| James Lilly, Jr. # 12778-171, ) | Civil Action No. 9:06-1038-TLW-GCK |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATIONS** |
| ) | **OF THE MAGISTRATE JUDGE** |
| Marlboro County Sheriff Department; ) | |
| Marlboro Terry; Richard Bryant; ) | |
| George McCleod; and William Smith; ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I. INTRODUCTION

The Plaintiff, James Lilly, Jr. ("Plaintiff" or "Lilly"), Register Number #12778-171, is a federal prisoner who currently is incarcerated in the Federal Correctional Institution ("FCI") in Edgefield, Bennettsville, South Carolina. Proceeding *pro se*, Plaintiff commenced this action against the Marlboro County Sheriff Department, Marlboro Terry, Richard Bryant, George McCleod, and William Smith (collectively, the "Defendants").[1]

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2), D.S.C., the undersigned United States Magistrate Judge is authorized to review this case and submit findings and recommendations to the district court.

---

[1] The Plaintiff, James Lilly, Jr., is currently incarcerated in a federal prison for knowingly possessing in and affecting commerce, a firearm, that being a Marlin 12-gauge shotgun, which had been shipped and transported in interstate commerce. *See United States v. James Lilly, Jr.*, Criminal Action No. 4:05-CR-00911-RBH. Plaintiff's federal firearms conviction has no connection to Plaintiff's arrest on November 9, 2004 which forms the basis of this action. *See* Plaintiff's Answers to the Court's Special Interrogatories [4] at p. 2, Question # 7.

## II. THE *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

## III.  FACTUAL BACKGROUND

Plaintiff brought this action to dispute the sufficiency of the evidence used in connection with his arrest by Marlboro County Sheriffs on November 9, 2004.  On that date, a fight occurred on Pitt Street (in Marlboro County) which involved approximately thirty (30) people, including Plaintiff, his nephew, and some family friends; the fight resulted in the killing of a man named Kelvin Pratt.  In addition to alleging that there was insufficient evidence to support his arrest warrants, Plaintiff also alleges that he attempted to swear out a warrant against other individuals involved in the November 9, 2004 melee, but he was not allowed to do so.  Plaintiff further alleges in his Complaint that the newspaper printed inaccurate information regarding his arrest and the melee that occurred on that day.  Plaintiff contends that after he had attempted to have the "statement" (apparently made by the newspaper) corrected, none of the Defendants would respond to him.  It appears that Plaintiff holds the Defendants responsible for not correcting the allegedly false information printed in the newspaper.

With respect to Plaintiff's allegation that there was insufficient evidence for his arrest, the record before this court reflects that after the melee, the Marlboro County Sheriff's deputies interviewed eyewitnesses, who testified to Plaintiff's actions.  Plaintiff was arrested and accused of two counts of assault and battery of a high and aggraviated nature ("ABHAN") and one count of unlawful possession of a firearm.  One count of ABHAN was a result of a report by a sixteen-year old boy, Nicholas Johnson, that the Plaintiff had attacked him and cut him on the right arm.  The second count of ABHAN was a result of an eyewitness statement that Plaintiff struck Kelvin Pratt during the fight.  The charge of possession of a firearm was based on reports and information received by officers that Plaintiff, who was a convicted felon as of November 9, 2004, had been in possession of the firearm at the time of the fight and also had been firing a weapon in the air prior to the murder of Kelvin Pratt.[2]

---

[2]   *See* Defendants' Answer at ¶ 6; *see also* Affidavit of Richard Bryant, *and* Affidavit of George McLeod, both attached to Defendants' Motion for Summary Judgment [15].

Defendants contend that with respect to Plaintiff's complaints that the newspaper printed incorrect information regarding the murder and the Plaintiff's arrest, there is no allegation that any of the Defendants had any involvement regarding the information printed in the newspaper. Furthermore, the Defendants have no information regarding the Plaintiff's allegation that he had attempted to swear out a warrant against other individuals.[3]

Petitioner was given a $30,000.00 bond. Petitioner seeks compensation for pain and suffering, reimbursement of the money he paid to the bondsman, and an investigation of the Defendants by someone outside of Marlboro County. [1]

## IV. PROCEDURAL HISTORY

Plaintiff filed this complaint on March 30, 2006.[4] After the case was brought into proper form, the Defendants were served and filed an answer on July 21, 2006. [9] On September 15, 2006, the Defendants filed a motion for summary judgment. [15] On September 18, 2006, the undersigned issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff that the Defendants had filed their Motion, that Plaintiff was required to respond, and, if he failed to respond, this court might grant the relief requested. [29]

Thereafter, on October 16, 2006, the Plaintiff filed a motion for enlargement of time in which to respond to the Defendants' Motion. [17] On October 17, the Defendants filed a reply, stating they had no objection to Plaintiff's motion. [18] On November 21, the Plaintiff filed a Memorandum opposing Defendants' Motion for summary judgment. [20] In response, on December 4, 2006, the Defendants filed a Reply to Plaintiff's Memorandum. [21] Accordingly, the case is ripe for review by the court.

---

[3] *See* Defendants' Memorandum [15] at p. 3.

[4] Plaintiff has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery date" of this Petition.

## V.  THE STANDARD FOR DECIDING A MOTION FOR SUMMARY JUDGMENT

With respect to determining a motion for summary judgment, as the Supreme Court held in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion.  *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987).  Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions.  *Stone v. University of Md. Medical Sys. Corp.*,  855 F. 2d 167 (4th Cir. 1988).

## VI.  ANALYSIS

As a *pro se* litigant, Plaintiff's Complaint must be construed liberally by this court. Nevertheless, a careful review of all of the pleadings in this case has led this court to recommend, for the reasons set forth below, that the Defendants are entitled to summary judgment as a matter of law.

As a threshold matter, the Plaintiff argues in his Reply to Defendants' Motion for Summary Judgment [20] that the Defendants failed to answer the complaint and thus the allegations of the complaint are deemed admitted.  In response, the Defendants argue, and this court agrees, that the Defendants filed an answer to the complaint and served it on the Plaintiff at his last known address at the Dillon Detention Center.  [9]  This was the same address used by Defendants when they served Plaintiff with their Motion for Summary Judgment.  [15] Defendants state that neither pleading was returned as undeliverable.  [21]  The court finds that the Defendants properly answered the Complaint, and will turn to the merits of the case.

## A.  Whether Plaintiff was subjected to a violation of his constitutional rights

## due to false arrest

Plaintiff claims in his Complaint that the "Marlboro County Sheriff's office lied on statements and evidence to have me arrested on charges occurring on and around November 9, 2004.  There was no evidence to support these charges to have me arrested."[5]  The Plaintiff also alleges in his Complaint:

> 11/9/04. A fight occurred on Pitts Circle involving my nephews and some family friends against some people there.  A man was killed at that time.  I was arrested along with them.  I was accused of assault and battery of a high and aggravated nature as well as being in possession of a firearm.  As a result of this, I was given a $30,000 bond.  I had to pay a bondsman to get out of jail.  On the statements given by the allegedly 'eyewitnesses,' none stated that James Lilly, Jr. did the following:
>     1) had possession of a firearm
>     2) possession of a knife
>     3) assaulting Johnson with a knife
>     4) kicking Kelvin Platt at anytime during the altercation
>     5) breach of peace.[6]

The Defendants contend that as a result of the investigation conducted after the murder of Kelvin Platt on November 9, 2004, the Plaintiff was arrested on two counts of ABHAN and unlawful possession of a weapon.[7]  The Plaintiff contests the sufficiency of the evidence gathered and used in the investigation of the murder of Kelvin Pratt, which resulted in the issuance of these warrants for his arrest.  As the Affidavits of the Defendants indicate, there was an investigation into this murder, and signed statements by eyewitnesses implicated the Plaintiff in the offenses for which he was arrested.

To set forth a claim for unlawful arrest, a plaintiff must show a lack of probable cause. *Moody v. Ferguson*, 732 F. Supp. 627, 632 (D.S.C. 1989).  Probable cause to justify an arrest arises when "facts and circumstances within the officer's knowledge . . . are sufficient to warrant

---

[5]     *See* Complaint [1] at p. 4.

[6]     *Id.*

[7]     *See* Exhibits 1, 2, and 3 to Defendants' Memorandum (copies of arrest warrants served on Plaintiff).

a prudent person, for one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Porterfield v. Lott,* 156 F3d 563, 569 (4th Cir. 1998), *quoting Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). In the investigating the murder of Kelvin Platt, the defendants clearly unearthed more than sufficient probable cause to apply for the arrest warrants noted above.[8]

With respect to Plaintiff's initial charge of ABHAN, Marlboro County Sheriff's deputies received a signed statement from a sixteen year old boy named Nicholas Johnson concerning his grandmother's refusal to let Plaintiff's relatives into her yard because they were selling drugs.[9] According to Mr. Johnson's statement, Kwame Lilly asked him why they were not allowed into the yard, and "[t]hen his uncle 'Jr.' came in my face and said I tried to cut his nephew. Then 'Jr.' swung and cut me on my right arm and then when I was running to get 'Jr.' my dad and Kelvin was trying to stop me."[10] The Plaintiff, James Lilly, Jr., is also known as "Junior" or "Jr."[11]

As a result of the signed statement submitted by Nicholas Johnson, it was determined upon application by Marlboro County Magistrate Hunter that probable cause existed for the arrest of the Plaintiff for the offense of assault and battery of a high and aggravated nature.[12] Thus, the Plaintiff was arrested pursuant to a facially valid arrest warrant, lawfully obtained after sufficient information through the investigation was received indicating probable cause.

---

[8]     *See* affidavits of Marlboro Terry, Richard Bryant and George McLeod, attached to Defendants' Memorandum. [15]

[9]     *See* Exhibit 4 attached to Defendants' Memorandum [15], Voluntary Statement of Nicholas Johnson.

[10]    *Id.*

[11]    See Affidavit of Marlboro Terry, at ¶ 2, attached to Defendants' Memorandum.

[12]    See Exhibit 1, attached to Defendants' Memorandum.

As for the Plaintiff's second arrest for ABHAN, the Plaintiff was arrested for striking the decedent, Kelvin Platt, while he was involved in the fight with Chanti Lilly.[13] In investigating the murder of Kelvin Platt, the defendants received a signed and written statement from Trina Harrington describing the events surrounding the murder. According to Ms. Harrington's statement:

> Jr. Lilly said 'Go and get your man.' Then Shantee [Chonti] pull a 9mm out on Kelvin. He pointed the gun in his face. Then Shantee put the 9mm down and started walking towards Kelvin swinging at Kelvin's face. Kelvin and Shantee started fighting then Qwame [Kwame] ran over there and pick up the gun. ... While they are fighting Jr. Lilly and Little Ron started hitting Kelvin while he was on the ground. . . . [14]

As a result of the information Defendants received during the course of their investigation, it was determined that probable causes existed for an application for an arrest warrant for the Plaintiff, which was approved and signed by Marlboro County Magistrate Hunter.[15]

As for the third charge for which the plaintiff was arrested, deputies had received reports from individuals at the scene that the plaintiff had been in possession of a weapon.[16] This information was verified in the voluntary statement of Feliecia Brown in which she stated:

> My cousin Keneica Harrington told me that there had been some shooting. I went to my mom house and had my Aunt Nancy Terry to call the police. . . . Then the police came and me, Kelvin and my Uncle Ralph was talking to the police telling them about the shooting and who was doing it. . . . That's when Kwame, Ron, and James Lilly was in the woods and they started making noises. I told the police that they was the ones with the guns and that he needed to call someone else and talk to them.[17]

---

[13]  See Exhibit 2, attached to Defendants' Memorandum (arrest warrant for the Plaintiff for assault and battery of a high and aggravated nature).

[14]  See Exhibit 5, voluntary statement of Trina Harrington; see also affidavit of Marlboro Terry.

[15]  See Exhibit 2.

[16]  See Affidavits of Marlboro Terry, Richard Bryant, and George McLeod.

[17]  See Exhibit 6, Voluntary Statement of Feliecia Brown.

As a result of this information compiled by Marlboro County Sheriff's deputies, application was made for an arrest warrant for the plaintiff, which was approved and issued by Magistrate Hunter.[18]

Thus, for each of the arrest warrants used in bringing the Plaintiff into custody, not only did the Defendants assemble information regarding the charges, but also received written and signed statements from witnesses at the scene detailing the illegal actions undertaken by the Plaintiff. As a result, it cannot be said that the defendants did not have probable cause to apply for the arrest warrants used in bringing the Plaintiff into the custody of Marlboro County.

Furthermore, as noted above, each warrant was considered and signed by a neutral Magistrate, Judge Hunter of Marlboro County. Thus, the Plaintiff was arrested by facially valid warrants. As the Fourth Circuit has noted, a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant. *Porterfield v. Lott*, 156 F3d 563, 568 (4th Cir. 1998). Implicitly, the Fourth Circuit has recognized that a claim for false arrest may be considered only when no arrest warrant has been obtained. *Id*. When a suspect's rights are protected through obtaining a warrant from a neutral Magistrate, the officers involved should in turn receive some protection from suit under 42 U.S.C. § 1983. *Torchinsky v. Siwinski*, 942 F2d 257, 262 (4th Cir. 1991). "Otherwise, the threat of liability would force officers to continuously second-guess the considered decisions of Magistrates." *Id*.

Even if the Plaintiff deems the arrest warrants and his subsequent arrest as improper, and claims that justice was not served due to his alleged innocence, he does not have a valid cause of action against these Defendants. As the United States Supreme Court has reasoned:

> The Constitution does not guarantee that only the guilty will be arrested. If it did,
> § 1983 would provide a cause of action for every defendant acquitted - indeed, for
> every suspect released....Given the requirements that arrests be made only on probable cause
> and that one detained be accorded a speedy trial, we do not think a
> Sheriff executing an arrest warrant is required by the Constitution to investigate

---

[18] *See* Exhibit 3, arrest warrant for James Lilly for unlawful possession of a weapon.

> independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent ... §1983 imposes liability for violations of rights protected by the Constitution, not for violations of duty of care arising out of tort law."

*Baker v. McCollan*, 443 U.S. 137, 145-46 (1979).

Based on the foregoing, the Plaintiff has no cause of action against these Defendants under a theory of false arrest. Accordingly, it is recommended that this cause of action must be dismissed.

### B.  Whether Plaintiff has set forth a cause of action for supervisory liability against Defendant Sheriff William Simon

According to the Affidavits of the Defendants Terry, Bryant, and McLeod, these deputies were involved in the investigation of the murder of Kelvin Platt, which resulted in the issuance of arrest warrants for the plaintiff. There are no actions are attributable to Defendant Simon, who has stated by Affidavit that "[a]s Sheriff at the time, I was not directly involved in the investigation of the murder of Kelvin Pratt[.]"[19] To the extent that Plaintiff's Complaint, read liberally, could be construed by the court to state a cause of action for supervisory liability against Defendant Simon, who was Sheriff of Marlboro County at the time, Plaintiff has failed to state a cause of action.

There are three elements necessary to establish supervisory liability under Section 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."  *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). A plaintiff may not satisfy his burden of establishing supervisory liability by "pointing to a

---

[19]     Affidavit of William Simon, attached to Defendants' Memorandum.

single incident or isolated incident, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Slakan v. Porter*, 737 F2d 368, 373 (4th Cir. 1984).

In this action, there is absolutely no showing or allegation that Defendant Simon, as Sheriff of Marlboro County at the time of the alleged incidents giving rise to this action, failed to train or properly supervise his deputies. Plaintiff likewise cannot create an inference regarding Simon that his deputies were engaged in conduct posing "a pervasive and unreasonable risk" of constitutional injury to the plaintiff. Nor can Plaintiff show that Simon demonstrated deliberate indifference or tacit authorization of any allegedly improper conduct.

Finally, because the Defendants Bryant, Terry, and McLeod violated no constitutional rights belonging to the Plaintiff, there can be no "affirmative causal link" to constitutional injury. Thus, this cause of action is without merit, and it is recommended that it be dismissed.

### C.  Whether Plaintiff has set forth a claim under the doctrine of Respondeat Superior against Defendant Sheriff William Simon or Defendant Marlboro County Sheriff's Department

Defnedants contend, and this court agrees, that the Plaintiff in this action has made no allegation of personal involvement on the part of Defendant Simon. In fact, Defendant Simon had no involvement or role in the arrest of the plaintiff.[20]

To the extent that Plaintiff's allegations in the Complaint are construed liberally to set forth a cause of action under respondeat superior, such liability cannot be applied to governmental entities or officials based solely on their relationships as masters. *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). If there is no causal relation between the alleged conduct of Defendant Simon and the Marlboro County Sheriff's Department and the Plaintiff's alleged constitutional deprivation, respondeat superior liability does not attach. Therefore,

---

[20]    Affidavit of William Simon, attached to Defendants' Memorandum.

Defendant Simon and the Marlboro County Sheriff's Department have no liability under the theory of respondeat superior, and it is recommended that to the extent Plaintiff's complaint has alleged such a theory, this cause of action should be dismissed.

**D.  Whether Plaintiff has set forth a constitutional violation against the Defendants on the grounds he was allegedly denied the opportunity to take out warrants against others**

In his Complaint, the Plaintiff states that "... I tried to make a complaint or take out a warrant on some of the other people involved.  They had threatened to kill me.  They would not let me sign the warrant.  The police had to fire a warning shot to keep the crowd of people off me."[21]  It is not clear to the court which occurrence Plaintiff is referring to, and Plaintiff does not explain the reason a crowd of people had become angry with him.  Regardless, however, there is no law which provides that an individual has a constitutional right to take out a warrant against another.  Thus, to the extent Plaintiff's complaint sets forth this allegation, (and the Defendants do not concede any such thing happened), it remains that Plaintiff has no right to take out a warrant against another person.   In the present case, the Defendants had investigated the matter and had ascertained, through written and signed statements, what had occurred on November 9, 2004, and the Plaintiff had no basis for taking out warrants against others.  To allow the Plaintiff to swear out arrest warrants for others, pointing the blame away from him, would put the defendants in the position of being well-trained officers knowing that the plaintiff's affidavit failed to establish probable cause, based on the investigation already undertaken.  As the Seventh Circuit has noted, complaints from putative victims about alleged crimes generally establish probable cause to arrest, unless the complaint would lead a reasonable officer to be suspicious.  If a reasonable officer would be suspicious, then the officer is obliged to conduct further investigation of the complaint.  *Neiman v. Keane*, 232 F.3d 577, 581 (7th Cir. 2000).

---

[21]     Complaint at p. 5.

In this case, if the Defendants had allowed the Plaintiff to apply for an arrest warrant and take it before a Magistrate, they would be failing to act as responsible law enforcement officers by allowing such a petition to go forth. Furthermore, the Defendants would have been facing the almost certain possibility that they would be violating the Fourth Amendments rights of others, which may be established if one could show that officers acted in reckless disregard, with a high degree of awareness of the probable falsity of statements contained in the arrest warrant application.

Even if the Defendants were negligent in not allowing the Plaintiff to swear out a warrant, the due process clause is not implicated when a public official negligently causes loss of, or injury to, life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327 (1986). Liability for negligently inflicted harm is categorically beneath the constitutional due process threshold. *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

Accordingly, even if the Defendants did not allow the Plaintiff to take out arrest warrants against others regarding the matters involved in this Complaint (which Defendants do not concede), no constitutional rights belonging to the Plaintiff were violated. It is recommended that to the extent the Complaint sets forth this cause of action, it should be dismissed.

### E.  The Defendant Marlboro County Sheriff's Department Is Not a Legal Entity and is not subject to suit

The Marlboro County Sheriff's Department is not a legal governmental entity and as such, cannot be sued. The Marlboro County Sheriff's Department is a group of officers in a building. Inanimate objects are not subject to suit under Section 1983. It is well-settled that buildings and correctional institutions, like sheriff's departments and police departments, are not usually considered legal entities subject to suit. *See, e.g., Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir.1985)(Denver Police Department not a separate suitable entity), vacating and remanding for consideration of mootness, 475 U.S. 1138 (1986). Therefore, the Sheriff's

Department is not a "person" subject to suit under 42 U.S.C. § 1983 and dismissal of this Defendant is recommended.

### F.  Whether Plaintiff's Allegations that Improper Information was Published in a newspaper implicates his constitutional rights

Plaintiff alleges in his Complaint that the newspapers published erroneous information regarding his arrest and that evidently none of the Defendants would assist him in correcting what he regarded as the erroneous information.[22]  Apparently, the Plaintiff claims that the allegedly incorrect information damaged his name.  However, there is no free-standing federal due process claim arising from injury to one's reputation.  *Jefferson v. Jefferson County Public School System*, 360 F3d 583, 586 (6th Cir. 2004).  This type of claim is viable only in combination with two other elements:  When there is some injury to employment in addition to damage to reputation, and a subsequent denial of procedural due process.  *Id*. An allegation based solely on an allegation of defamation is not sufficient to state a claim under Section 1983, unless the act by the public officials significantly altered a protected status, such as employment, previously recognized by state law.  *Paul v. Davis*, 424 U.S. 693, 710-11 (1976).

Therefore, Plaintiff's allegations, even if true, do not rise to the level of a violation of his constitutional rights.  It is recommended that this cause of action be dismissed.

### G.  The Plaintiff may not seek damages under Section 1983 Against a State Official Acting in his Official Capacity

If the Complaint is interpreted to allege a violation of 42 U.S.C. §1983 against the individual Defendants, in their official capacities, or the Marlboro County Sheriff's Department, such action is barred.  A plaintiff may not seek damages under Section 1983 against a state or a state official representing the state in his official capacity, as a state is not a "person" within the meaning of the statute.  *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978).

---

[22]     Complaint at p. 5.

In *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), the Supreme Court concluded that "...neither a state nor its officials acting in their official capacity are 'persons' under §1983." In *Will*, the Court, analyzing the interplay between Section 1983 and the Eleventh Amendment, ruled that because the Eleventh Amendment provides an absolute immunity for the states against all suits, the "person" referred to in Section 1983 cannot include a state or any divisions of the state. *Id*. at 70. The Eleventh Amendment immunity granted to the states "applies only to states or governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. *Id*. at 70-71. Thus, the individual defendants, as state officials acting in their official capacities, are not "persons" under Section 1983, and any allegations interpreted to fall under Section 1983 are fatally deficient. *See Gulledge v. Smart*, 691 F. Supp. 947, 955 and n.7 (D.S.C. 1988).

The Plaintiff also names the Marlboro County Sheriff's Department as a defendant in this action. Any claim against the Marlboro County Sheriff's Department must fail as a matter of law because the Sheriff's Department is an arm of the state and entitled to Eleventh Amendment immunity. *McCall v. Williams*, 52 F. Supp. 2d 611, 623 (D.S.C. 1999).

Therefore, it is recommended that all causes of action against all Defendants should be dismissed pursuant to Eleventh Amendment immunity.

## RECOMMENDATION

Based upon the foregoing discussion, it is recommended that the Defendants' Motion for Summary Judgment **[15] be granted.**

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

December 6, 2006
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).